IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMIE BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:13-CV-862-WKW |
| | ) [WO] |
| CORIZON HEALTH, INC., | ) |
| CORIZON, INC., DR. MICHAEL | ) |
| BRADFORD, DR. DYJERLINN | ) |
| COPELAND, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jamie Barnes, a former inmate of the Alabama Department of Corrections ("ADOC"), brings this § 1983 action alleging deliberate indifference by a contract healthcare provider and two physicians. Mr. Barnes claims that he is blind as a result of Defendants' acts and omissions.

Before the court is Defendant Dr. Michael Bradford's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 18.) Mr. Barnes filed a response in opposition (Doc. # 20), to which Dr. Bradford filed a reply (Doc. # 21). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion is due to be denied.

## I. JURISDICTION AND VENUE

Subject-matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367. Personal jurisdiction and venue are not contested.

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal quotation marks omitted). The statute of limitations begins to run on a § 1983 claim when "the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the

injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).  In determining this issue, "a court must first identify the alleged injuries, and then determine when the plaintiff could have sued for them."  *Smith v. Shorstein*, 217 F. App'x 877, 881 (11th Cir. 2007).

### III.  FACTS

The facts essential to resolution of the Rule 12(b)(6) motion to dismiss are as follows.  From some time in 2008 until February, 2012, Mr. Barnes was an inmate in the custody of ADOC.  From approximately October, 2009 until January, 2011, Mr. Barnes was incarcerated at Staton Correctional Facility in Elmore County, Alabama.  From January, 2011 until February, 2012, Mr. Barnes was incarcerated at Frank Lee Correctional Facility, also in Elmore County.

Dr. Bradford is an optometrist who provided optometric services to inmates at Kilby Correctional Facility in Montgomery County, Alabama.  ADOC maintains an eye clinic for inmates at Kilby.  Mr. Barnes alleges that Dr. Bradford was a contract employee of either Defendant Corizon Health. Inc., Defendant Corizon, Inc.,[1] or ADOC.

Sometime in March, 2010, Mr. Barnes notified prison staff at Staton that he was having problems with his vision and requested medical attention.  On or about March 31, 2010, Dr. Bradford and other medical staff saw Mr. Barnes and referred

---

[1] The court will refer to the Corizon Defendants collectively as "Corizon."

3

him to the Eye Clinic at Kilby Correctional Facility in Montgomery County, Alabama. On or about April 21, 2010, Dr. Bradford and other employees observed Mr. Barnes at Kilby. Dr. Bradford allegedly diagnosed Mr. Barnes with chronic iritis (an inflammation affecting the iris), and prescribed two medications to be applied topically to the eyes: Atropine and Pred Forte.

Mr. Barnes claims that he visited the nurse's station at Staton multiple times to pick up the prescriptions, but he was not provided with the medicines. Medical staff told Mr. Barnes that his medicines had not yet arrived. At various follow-up appointments in May, June, August, and September, 2010, medical staff noted on Mr. Barnes's chart that he needed the prescribed medicines. At some point in 2010, Mr. Barnes was given one bottle of either Atropine or Homatropine drops by one of the eye doctors who examined him.

After ADOC transferred Mr. Barnes from Staton to Frank Lee, he continued to request his prescriptions to no avail, notwithstanding his continued complaints about the deterioration of his sight. By March 1, 2011, Mr. Barnes was complaining that he "[could] hardly see." (Compl. at ¶ 14.) Medical staff at Frank Lee examined Mr. Barnes twice in March, 2011, where a doctor, unidentified in Mr. Barnes's complaint, renewed his prescriptions and altered the Atropine prescription to Homatropine. Dr. Bradford saw Mr. Barnes shortly thereafter on

March 21, 2011, and Dr. Bradford also allegedly renewed the prescriptions.[2] In April, 2011, someone – the complaint is unclear about who – gave Mr. Barnes a bottle of Homatropine drops that he could self-administer. This supply of Homatropine was limited, however, and Mr. Barnes was never provided with Pred Forte drops or any other steroidal drop. He claims that medical staff told him on several occasions that the Pred Forte drops had not been ordered.

On February 4, 2012, Mr. Barnes reported blurred vision to medical staff at Frank Lee. Mr. Barnes was unable to see the eye chart when examined by a nurse. The nurse communicated these facts to Dr. Dyjerlynn Copeland, who advised the nurse to send Mr. Barnes back to the general population if his blood pressure was normal. Because his blood pressure was normal, Mr. Barnes received no further treatment that day. Not long afterward, he was released from ADOC custody. Mr. Barnes claims that by the time he was released, he had become functionally blind.

In November 2013, Mr. Barnes sued Corizon, Dr. Copeland, and Dr. Bradford under 42 U.S.C. § 1983 for their alleged deliberate indifference to his serious medical needs. (*See* Compl. Count I.)[3] Mr. Barnes claims that from April,

---

[2] It is not clear why the prescriptions would require renewal within weeks or days of a previous renewal.

[3] Count II is against Corizon only for Corizon's alleged custom or policy of deliberate indifference. Counts III and IV (misidentified in the Complaint as Count VII) are also only against Corizon only for state-law negligence and negligent supervision. Although Dr. Bradford defends against Counts III and IV, Mr. Barnes makes it plain in his brief that he sues Dr. Bradford only for deliberate indifference. (Doc. # 20, at 7.)

2010 to February, 2012, he never received the prescribed Pred Forte drops and he only received two thirty-day supplies of Atropine or Homatropine drops. According to the Complaint, Dr. Bradford only saw Mr. Barnes three times: first, when he diagnosed the chronic iritis in March 2010, then in April, 2010, and again in March, 2011. (*See* Compl. at 7, 11.) The complaint alleges that all "Defendants" and Corizon's employees, including Dr. Bradford, were responsible for providing Mr. Barnes with his two prescriptions, and that they are all liable for deliberate indifference. (*See* Compl. at ¶ 19.)

## IV. DISCUSSION

Dr. Bradford's motion to dismiss relies upon three grounds for dismissal of the claims against him: (1) The Complaint fails to allege a plausible § 1983 claim establishing an Eighth Amendment violation for inadequate medical care; (2) Dr. Bradford is protected from suit based on qualified immunity; and (3) the two-year statute of limitations bars the § 1983 claim. The arguments are addressed in turn.

A.  **Plausibility of Section 1983 Claim (Count One)**

A § 1983 claim requires a deprivation of a federal statutory or constitutional right. Mr. Barnes alleges that Dr. Bradford deprived him of his Eighth Amendment rights by not providing adequate medical treatment for his eye condition. Dr. Bradford contends that the allegations do not satisfy the facial plausibility standard announced in *Iqbal*.

1.      *What Must Be Pleaded in Deliberate Indifference Cases*

To establish liability under § 1983 for an Eighth Amendment violation for inadequate medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "Every claim by a prisoner that he did not receive adequate medical treatment, however, does not state a violation of the Eighth Amendment." *Granda v. Schulman*, 372 F. App'x 79 (11th Cir. 2010).

In *Granda*, the Eleventh Circuit elaborated on the pleading requirements for an Eighth Amendment claim of deliberate indifference to serious medical needs:

> To state a claim of inadequate medical treatment, a prisoner must allege facts that satisfy both an objective and a subjective requirement.  *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  The plaintiff must allege an "objectively serious deprivation" of medical care, which requires (1) "an objectively serious medical need . . . that, if left unattended, pos[es] a substantial risk of serious harm," and (2) that the state actor's response "was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice actionable under state law." *Id.* (alterations in original) (internal quotations and citations omitted). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation and quotations omitted).
>
> A prisoner also must allege the state actor's subjective intent to punish by pleading facts that would show that he acted with deliberate

7

> indifference. *Taylor*, 221 F.3d at 1258. Accordingly, a prisoner alleges deliberate indifference by pleading: (1) the actor's "subjective knowledge of a risk of serious harm;" (2) the actor's "disregard of that risk;" and (3) "conduct that is more than *mere* negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (citation omitted).

*Id.* at 82–83 (footnote omitted) (emphasis added).

However, *Granda* noted "an intra-circuit split as to the third prong of deliberate indifference regarding the actor's conduct." *Id.* at 83 n.1. Several reported cases from the last few years require that a plaintiff plead or show, depending on the posture of the case, "conduct that is more than *gross* negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) (citing *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (emphasis added)). Whether conduct amounts to "more than gross negligence" is a fact-specific inquiry.[4]

### 2. *The Parties' Arguments*

There is no argument that Mr. Barnes has failed to allege an objectively serious deprivation of care. Instead, Dr. Bradford argues that the Complaint lacks allegations that he knew about and willfully ignored a risk to Mr. Barnes's eyesight. Dr. Bradford contends that in § 1983 deliberate indifference case law,

---

[4] For instance, different factual scenarios may support a claim for deliberate indifference to serious medical needs, such as: "(1) actual knowledge of a serious need for medical care, plus a failure to treat; (2) delay in treatment, potentially 'even for a period of hours'; (3) 'grossly inadequate care'; (4) 'a decision to take an easier but less efficacious course of treatment'; or (5) 'medical care which is so cursory as to amount to no treatment at all.'" *Woods v. Miller*, 215 F. App'x 796, 798 (11th Cir. 2007) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). The parties should be prepared to brief and argue the "more than gross negligence" standard at summary judgment or in trial briefing.

there is no vicarious liability, and so each defendant must be judged individually about what he or she knew. He claims that Mr. Barnes fails to offer facts about subjective knowledge or intent to support the general allegation that Dr. Bradford acted with deliberate indifference toward Mr. Barnes's serious medical needs. (*See* Doc. # 18, at 5–6.)

Mr. Barnes responds that "discovery may bear out that Dr. Bradford had no responsibility to provide medication," but Mr. Barnes "does not yet know the extent of [Dr. Bradford's] contractual or other responsibility . . . to ensure the medications were supplied" to Mr. Barnes. (Doc. # 20, at 2 n.1.) Mr. Barnes reminds that he need not *prove* Dr. Bradford's deliberate indifference at this stage. He asserts that the facts he has pleaded are facially plausible because they allow the court to draw the reasonable inference that (1) Dr. Bradford had a duty to ensure that Mr. Barnes received his prescriptions, and that (2) Dr. Bradford knew, especially by March 2011 at the second examination, that Mr. Barnes was not receiving the prescribed medicines.

In addition to citing the two visits to Dr. Bradford and the general allegations that "Defendants" collectively violated Mr. Barnes's Eighth Amendment rights, Mr. Barnes also references a physician's note in Mr. Barnes's file, cited in the Complaint, that "contain[s] the admonition 'to make sure [Mr. Barnes] gets his drops as ordered 4/21/10.'" (Compl. at ¶ 15.) According to Mr.

9

Barnes, "[t]his supports the allegation that [Dr. Bradford] had some duty to ensure that the drops were supplied" to Mr. Barnes. (Doc. # 20, at 3.) Also, Mr. Barnes asserts that the allegation that some doctor – not necessarily Dr. Bradford – eventually gave Mr. Barnes some of the prescription eye drops "tends to show that Dr. Bradford did, in fact, supply [him] with some, but not all, of the required medication[s], and that [Dr. Bradford] had a responsibility to do so." (Doc. # 20, at 3 (citing Compl. at ¶ 11).)

Dr. Bradford replies that there are no allegations in the Complaint that he had any relationship with, or responsibility over, persons working in the nurse's stations at the two prisons where Mr. Barnes should have received his prescriptions. He states that any general allegation that "Defendants" were responsible for providing medicine to Mr. Barnes is inadequate to satisfy the facial plausibility standard in *Iqbal.* Dr. Bradford further asserts that the physician's notation to "make sure" that Mr. Barnes received his prescriptions was not written on a date that Dr. Bradford saw Mr. Barnes and is not alleged to have been directed to or from Dr. Bradford. Assuming that Dr. Bradford gave the directive, he notes that there is no allegation that he could control any person who received the instruction. Finally, he criticizes paragraph 11 of the Complaint as failing to support any reasonable inference that Dr. Bradford is the doctor who eventually furnished a short supply of eye drops to Mr. Barnes because the Complaint

10

specifically alleges that "one of the eye doctors who examined [Mr. Barnes]" – not Dr. Bradford specifically – furnished that prescription.

Finally, Dr. Bradford repeats his primary argument that, even if the allegations of the Complaint support the reasonable inference that Dr. Bradford owed a duty to Mr. Barnes to ensure that prescriptions be provided, the Complaint lacks sufficient allegations that Dr. Bradford acted with deliberate indifference as opposed to some degree of negligence.

### 3. *The Court's Findings*

Although Dr. Bradford is not oft-mentioned in the Complaint, it can be deduced that he knew upon examining Mr. Barnes for the third time in March 2011 that Mr. Barnes had not been provided with medicines prescribed the previous April and that Mr. Barnes's sight was diminishing.  Thus, there are adequate allegations to support the inference that Dr. Bradford knew that Mr. Barnes was not receiving his prescribed medications and that the lack of treatment posed a substantial risk of serious harm.  Dr. Bradford has stressed that there are no allegations that he exercised supervisory authority over prison staff – whether employed by ADOC or Corizon – who may have been responsible for obtaining or providing physician-prescribed medicine or services to ADOC inmates.  However, as Mr. Barnes has pointed out, he has not yet conducted discovery, and as a former inmate, he lacks knowledge of the command structure within ADOC or Corizon or

the bounds of assigned responsibilities over the provision of prescription medicine in ADOC prisons. *See Freedman v. City of Allentown, Pa.*, 853 F.2d 1111, 1114 (3d Cir. 1988) (reasoning that "when the lack of factual specificity [in a complaint] is fairly attributable to [the] defendants' control of required information," a court should "permit[ ] the action to proceed to a reasonable amount of discovery to help [the] plaintiff make the necessary showing to prove her case." (internal quotation marks and alterations omitted). Thus, at this stage of the proceedings, the court will assume that Dr. Bradford could have acted to ensure that the prescriptions were furnished.[5]

Dr. Bradford has also emphasized that there are no non-conclusory, specific allegations that he acted with deliberate indifference toward Mr. Barnes. The question presented by this argument is whether Mr. Barnes's "facts, if proven, may allow a jury to infer that [Dr. Bradford acted with] penal intent," as opposed to mere negligence. *Woods v. Miller*, 215 F. App'x 796, 798 (11th Cir. 2007). An attitude of deliberate indifference may be inferred from certain "categories of action or inaction" including a defendant's failure to procure medical treatment in spite of knowledge of a serious medical need. *McElligott*, 182 F.3d at 1255; *see also Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (requiring that the

---

[5] Dr. Bradford contends in effect that a physician has no duty to see that his orders are followed. That is a mixed question of law and fact, and neither party addresses the legal side of the question.

plaintiff show that defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety").  The Complaint provides that Dr. Bradford saw Mr. Barnes, diagnosed iritis, prescribed medicines, and saw Mr. Barnes again about a year later at which point Mr. Barnes complained of not receiving the prescribed medicines and of experiencing significant vision loss.  After the third examination, Dr. Bradford allegedly continued in his failure to ensure that ADOC or Corizon followed his orders by providing the prescriptions to Mr. Barnes.

Upon careful review of these allegations, and in consideration of Defendants' control of critical information weighing on the factual detail of the allegations, the court agrees with Mr. Barnes that he meets his burden of pleading that Dr. Bradford acted with deliberate indifference.  Accordingly, Dr. Bradford's motion to dismiss for failure to state claim is due to be denied.

**B.**     **<u>Qualified Immunity</u>**

Dr. Bradford argues that he is entitled to qualified immunity.  It is not clear from the complaint or the briefing whether Dr. Bradford is an employee of ADOC as opposed to Corizon.  If Dr. Bradford is an employee of Corizon, his qualified immunity argument is foreclosed by *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999), *opinion amended by* 205 F.3d 1264 (11th Cir. 2000).  In *Hinson*, the Eleventh Circuit relied upon the reasoning of *Richardson v. McKnight*, 521 U.S. 399 (1997), where the Supreme Court declined to extend qualified immunity to

privately employed prison guards, to hold that qualified immunity may not be extended to privately employed prison physicians. Based upon *Hinson*, Dr. Bradford cannot claim the protection of qualified immunity if he was privately employed. If, however, Dr. Bradford is an employee of ADOC raising the qualified immunity defense, he is not entitled to the protection of qualified immunity at this juncture because Mr. Barnes has pleaded a cognizable deliberate indifference to medical needs claim, *see supra* Part IV.A.3., and his right to be free from deliberate indifference was clearly established at the time his right was allegedly violated. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Hence, Dr. Bradford's motion to dismiss on this ground is due to be denied.

C. **Statute of Limitations**

Dr. Bradford also raises the statute of limitations as a defense to the claims against him. A defendant may raise an affirmative defense such as statute of limitations in a Rule 12(b)(6) motion to dismiss, but dismissal "is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta*, 358 F.3d at 840. "'All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought.'" *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008) (quoting *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)). Mr. Barnes brought his action in Alabama, where the governing

limitations period for personal injury actions is two years. *See Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989). The parties disagree about which statutory provision supplies the two-year statute of limitations, but the length of limitations period is not in dispute. (*Compare* Doc. # 18, at 7, *with* Doc. # 20, at 7.)

Dr. Bradford argues that Mr. Barnes's § 1983 claim against him is barred because the most recent date of treatment by Dr. Bradford referenced in the Complaint occurred on March 21, 2011. Dr. Bradford asserts that there is no allegation of any "act or omission" committed by him after that date, and as he points out, the Complaint was filed over two years later on November 26, 2013. Mr. Barnes counters, however, that he avoids any statute of limitations bar based upon the continuing violation doctrine because the "withholding of medications during [Mr. Barnes's] incarceration – constitute[s] a continuing violation." (Doc. # 20, at 7.)

A plaintiff may sue on an otherwise time-barred claim where additional violations of the law occur within the statutory period. "When the violation alleged involves a continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." *Robinson v. United States*, 327 F. App'x 816, 818 (11th Cir. 2007) (citing *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir. 1974) *vacated on other grounds by*, *O'Connor v.*

*Donaldson*, 422 U.S. 563 (1975)).[6]  "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one[-]time violation, which does not extend the limitations period, or the continuation of that violation . . . which does." *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (quoting *Knight v. Columbus, Ga.*, 19 F.3d 579, 580–81 (11th Cir. 1994)) (internal alterations and quotations omitted).  "Where a continuing violation is found, the plaintiff[ ] can recover for any violations for which the statute of limitations has not expired." *Knight*, 19 F.3d at 581.

Dr. Bradford argues that the continuing violation doctrine does not apply where a defendant is accused of "isolated or sporadic violations." (Doc. # 21, at 10 (citing authorities from other circuits).)  Dr. Bradford also criticizes Mr. Barnes for "suggest[ing] that [the] allegations of continuing violations by other defendants somehow extend the statute of limitations as against Dr. Bradford." (Doc. # 21, at 12 (citing *Palmer v. Bd. of Comm'rs for Payne Cnty. Okla.*, 765 F. Supp. 2d 1289, 1295 (W.D. Okla. 2011) *aff'd sub nom. Palmer v. Bd. of Comm'rs ex rel. Payne Cnty. Okla.*, 441 F. App'x 582 (10th Cir. 2011)).)  In *Palmer*, the court required the plaintiff to offer evidence *at summary judgment* that each defendant "committed at least one wrongful act within the statute of limitations period." *Id.*

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Binding precedent from this circuit supports Mr. Barnes's contention that he endured a continuing violation of his civil rights.  *See Donaldson*, 493 F.2d at 528–29; *see also Neel v. Rehberg*, 577 F.2d 262, 264 (5th Cir. 1978).  In *Donaldson*, the plaintiff, a former patient at a state mental hospital who had been denied psychiatric treatment during an involuntary commitment spanning over fourteen years, brought a § 1983 suit against several individual defendants including a treating physician.  On appeal, the physician-defendant argued that the claims against him were time-barred because the plaintiff was removed from his care over four years before the plaintiff sued.  493 F.2d. at 528.  The court rejected the physician-defendant's argument and held that the statute of limitations for the plaintiff's § 1983 claims did not begin to run until the date that the plaintiff was released from the hospital because the plaintiff's confinement without treatment inflicted a "continuing injury." *Id.* at 529.

Mr. Barnes's situation is analogous to the plaintiff's case in *Donaldson*. Mr. Barnes's injuries continued accruing during the course of his incarceration because he was denied medical care every day that he did not receive his prescriptions, including times within the two-year window for the statute of limitations (*i.e.*, between November 26, 2011, and the February, 2012 release date).  If Dr. Bradford had a duty to ensure that Mr. Barnes received his medication, then he may have violated Mr. Barnes's constitutional rights beyond March 2011.  Hence,

17

the allegations are sufficient to allow application of the continuing violation doctrine to Mr. Barnes's claim against Dr. Bradford.  Thus, Dr. Bradford's motion to dismiss the Complaint as time-barred is due to be denied.

## V.  CONCLUSION

In accordance with the foregoing analysis, it is ORDERED that Dr. Bradford's motion to dismiss (Doc. # 18) is DENIED.

DONE this 31st day of July, 2014.

                      /s/ W. Keith Watkins
            CHIEF UNITED STATES DISTRICT JUDGE